| | |
|---|---|
| 1 | KAREN P. HEWITT |
|   | United States Attorney |
| 2 | ALESSANDRA P. SERANO |
|   | Assistant United States Attorney |
| 3 | California State Bar No. 204796 |
|   | Federal Office Building |
| 4 | 880 Front Street, Room 6293 |
|   | San Diego, California 92101-8893 |
| 5 | Telephone: (619) 557-7084/(619) 557-7381 (Fax) |
|   | Email: alessandra.p.serano@usdoj.gov |
| 6 | |
|   | Attorneys for Plaintiff |
| 7 | United States of America |

8         UNITED STATES DISTRICT COURT

9         SOUTHERN DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| 10 | UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0254-WQH |
|    |                            | ) | |
| 11 | Plaintiff,                 | ) | Date:    April 18, 2008 |
|    |                            | ) | Time:    2:00 p.m. |
| 12 | v.                         | ) | |
|    |                            | ) | GOVERNMENT'S SUPPLEMENTAL |
| 13 | JOSE SOBERANES-ROBLES,     | ) | RESPONSE TO DEFENDANT'S |
|    |                            | ) | MOTION TO DISMISS DUE TO |
| 14 | Defendant.                 | ) | GRAND JURY INSTRUCTION |
|    |                            | ) | |
|    |                            | ) | TOGETHER WITH STATEMENT OF |
|    |                            | ) | FACTS, MEMORANDUM OF POINTS |
|    |                            | ) | AND AUTHORITIES. |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel KAREN P. HEWITT, United States Attorney, and ALESSANDRA P. SERANO, Assistant U.S. Attorney, and hereby files its Supplemental Response and Opposition to the motion to dismiss the indictment filed on behalf of defendant JOSE SOBERANES-ROBLES ("Defendant") which is based upon the files and records of this case.

//

//

//

I

**STATEMENT OF THE CASE**

On January 30, 2008, a federal grand jury for the Southern District of California returned a two-count Indictment, charging Defendant with importation of cocaine and possession of cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841, 952, 960. The Defendant was arraigned on the Indictment on February 5, 2008, and entered a not guilty plea.

On March 17, 2008, this Court requested further briefing from the Government on the motion to dismiss the indictment due to improper grand jury instructions. The response is set forth below.

II

**STATEMENT OF FACTS**

A.  **THE OFFENSE**

On January 19, 2008, at approximately 9:54 p.m., Defendant entered the United States in the pre-primary area of the Calexico West Port of entry. Customs and Border Protection Officers Jones and Parrish were conducting pre-primary roving operations with a narcotic detector dog. The dog alerted to a green 1995 Toyota Tercel with California license plate number 5MDX066, which Defendant was driving. Officers escorted the vehicle through primary lane #9 for further inspection.

At primary, Officer Lopez received a negative customs declaration from the Defendant, who was the sole occupant of the vehicle. Defendant presented his Resident Alien card for identification. The vehicle was sent to secondary inspection for further inspection.

At secondary, Officer Othon received a negative customs declaration again from the Defendant. He was sent to the security office where officers patted him down and found nothing. Defendant was asked about the ownership of the vehicle and his purpose in Mexico. He stated that he was visiting his girlfriend in Mexicali and was in the process of buying the vehicle from his girlfriend's neighbor, "Susana". He claimed he could not recall "Susana's" last name.

Officers conducted the inspection of the vehicle at secondary where they found a special compartment underneath the rear seat. A total of 16 package were removed from the compartment,

1  each containing a white powdery substance later identified as cocaine. The weight of these
2  packages was approximately 18 kilograms/39.6 pounds.
3       Officer Othon returned the security office where he placed Defendant under arrest.
4  Defendant was observed lowering his head, signed and his eyes began to water.

5      **D.**    **DEFENDANT'S STATEMENT**

6       Defendant was advised of his <u>Miranda</u> rights in Spanish by ICE Special Agent Herzog and
7  witnessed by Special Agent Steele at approximately 12:42 a.m. Defendant acknowledged those
8  rights and agreed to speak to agents. He was also advised of his right to speak to the Mexican
9  consulate. He lowered his head and stated, in Spanish, that he wanted to "fuck" the people who
10 sent him here. He then stated that he wanted agents to help him "fuck" the people that sent him
11 and told agents that they could help him "fuck" that guy. Defendant denied knowledge of the
12 drugs in the vehicle. He admitted he took possession of the vehicle when he learned he could buy
13 it cheap, for $1,000.00. He also stated he buys and sells vehicles. He claimed that he was going
14 to buy the vehicle for his girlfriend.
15      Agent Herzog advised Defendant that she did not believe him because in his line of work,
16 he could get a better deal on a vehicle and in better condition. Defendant then allowed Agent
17 Herzog to obtain the telephone number for Susana from one of two cellular phones he had in his
18 possession. Defendant claimed one phone was his and the other was his girlfriend's phone.
19      Agents then advised him that they had found 18 kilograms of cocaine in the vehicle.
20 Defendant asked what he could do o he would not have to go to jail. Agent Herzog advised him
21 that he was going to jail. Defendant later told agents words to the affect "let's get those people and
22 see if we can get more somewhere else." He later described Susana and another man, Martin.
23      At the end of the interview, Defendant was allowed to call his girlfriend. He was overheard
24 saying that when he gets out of jail, he was going to kill "Kiti." He later called another friend to
25 get his personal property. He told the friend that the vehicle with the car seat in the rear had
26 cocaine in the trunk and that he should find "Kiti" and kill him.
27
28

**III**

**UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES**

**A.    THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED**

The Government incorporates by reference its motion response filed on March 4, 2008 along with the accompanying exhibits numbered 1-4. Moreover, the Government relies upon the reasoning set forth by Judge Moskowitz and Judge Houston in their two written orders denying the same motion to dismiss the indictment based upon faulty grand jury instructions.[1] See Exhibits 3-4 attached to the Government's initial motion response filed on March 4, 2008.

    **1.    Introduction**

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by United States District Judge Larry A. Burns on January 10, 2007. Defendant's Memorandum of Points and Authorities filed March 3, 2008 at 11-26 (hereafter "Memorandum").[2] Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved

---

[1] The two orders are identical in reasoning and language except for two minor differences. First, Judge Moskowitz's order discusses the video presentation given to the prospective grand jurors. See pages 1-2 of Exhibit 3 (Judge Moskowitz's order). Judge Houston's order mentions the video presentation in footnote 1, but notes that the video would not be discussed since the defendant did not make a challenge to the video presentation. See page 1 of Exhibit 4 (Judge Houston's order). Second, Judge Moskowitz's order invites the defendant to show actual prejudice by demonstrating that the Government knew of exculpatory evidence and did not present such evidence to the grand jury and show why the failure to present such evidence combined with Judge Burns' instructions caused actual prejudice. See page 11-12 of Exhibit 3. Judge Houston's order does not. This Court may rely upon the reasoning in either order, or both, as the two differences listed do not effect the merits of the argument Defendant sets forth in his motion.

[2] Defendant supplies a partial transcript of the grand jury proceedings which records the instructions to the impaneled grand jurors after the voir dire had been conducted. See Exhibit A to Memorandum (hereafter "Exhibit A"). Defendant also supplies a partial transcript of the grand jury proceedings which records the voir dire of several potential witnesses. See Exhibit B to Memorandum (hereafter "Exhibit B").

1  instructions, and by so doing rendered them improper to the point that the Indictment should be
2  dismissed.
3      In making the arguments concerning the two separate instructions, Defendant urges this
4  Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of
5  which were discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992). Concerning the
6  first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its
7  supervisory powers over grand jury procedures. This is a practice the Supreme Court discourages
8  as Defendant acknowledges, citing United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the
9  grand jury's operational separateness from its constituting court, it should come as no surprise that
10 we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes
11 of grand jury procedure."). Id. Isgro reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct. Absent such prejudice – that is, absent "'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]" – a dismissal is not warranted.

17 974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction,
18 in an attempt to dodge the holding in Williams, Defendant appears to base his contentions on the
19 Constitution as a reason to dismiss the Indictment. See Memorandum at 26 ("A grand jury so
20 badly misguided is no grand jury at all under the Fifth Amendment."). Concerning that kind of a
21 contention, Isgro stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted).[3]

The portions of the two relevant instructions approved in Navarro-Vargas were:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

> The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems. It is entirely proper that you should receive this assistance. If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[4] 408 F.3d at 1203 (footnote omitted). "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law; it receives no briefs or arguments from the parties. The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'" Id.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution. The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . . The instructions balance the praise for the government's attorney

---

[3] In Isgro, the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries. They did not prevail. 974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment." (relying on Williams)).

[4] The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it. "We recognize and do not discount that some grand jurors might in fact vote to return a no bill because they regard the law as unwise at best or even unconstitutional. For all the reasons we have discussed, there is no post hoc remedy for that; the grand jury's motives are not open to examination." 408 F.3d at 1204 (emphasis in original).

by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207. Id. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

### 2. The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.
>
> But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you. That's a judgment that congress makes.
>
> And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Exhibit A at 8-9.[5]

In line with Navarro-Vargas, Judge Burns instructed the grand jurors that they were forbidden "from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity [as] criminal is not up to you." Exhibit A at 8. Defendant claims, however, that the instructions "make it painfully clear that grand jurors simply may not choose not to indict in the event of what appears to them to be an unfair application of the law: should 'you disagree with that judgment made by

---

[5] The United States' Appendix recounts the excusing of the three individuals. This transcript involves the voir dire portion of the grand jury selection process, and has been redacted to include redaction of the individual names, so as to provide only the relevant three incidents wherein prospective grand jurors were excused. Specifically, the pages of the supplemental transcript supplied are: United States' Appendix at 15, line 10; 17, line 18; 24, line 14; 28, line 2; 38, line 9; and 44, line 17.

1  Congress, then your option is not to say 'well, I'm going to vote against indicting even though I
2  think that the evidence is sufficient. . . .'" Memorandum at 22. Defendant contends that this
3  addition to the approved instruction "flatly bars the grand jury from declining to indict because the
4  grand jurors disagree with a proposed prosecution." Id. Defendant further contends that the flat
5  prohibition was preemptively reinforced by Judge Burns when excused prospective grand jurors.

6      In concocting the theory of why Judge Burns erred, Defendant posits that the expanded
7  instruction renders irrelevant the debate about what the word "should" means. Defendant contends
8  that "the instruction flatly bars the grand jury from declining to indict because they disagree with
9  a proposed prosecution." Memorandum at 12. This argument mixes-up two of the holdings in
10 Navarro-Vargas in the hope they will blend into one. They do not.

11     Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom
12 of the criminal laws. The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted
13 by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an
14 expression of discretion. Jury nullification is forbidden although acknowledged as a sub rosa fact
15 in grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely within
16 his rights, and within the law, when he excused the three prospective grand jurors because of their
17 expressed inability to apply the laws passed by Congress. Similarly, it was proper for him to
18 remind the impaneled grand jurors that they could not question the wisdom of the laws. As we will
19 establish, this reminder did not pressure the grand jurors to give up their discretion not to return an
20 indictment. Judge Burns' words cannot be parsed to say that they flatly barred the grand jury from
21 declining to indict because the grand jurors disagree with a proposed prosecution, because they do
22 not say that. That aspect of a grand jury's discretionary power (i.e., disagreement with the
23 prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the
24 term "should" was germane.[6] 408 F.3d at 1204-06. This other instruction bestows discretion on

---

[6] That instruction is not at issue here. It read as follows:

> [Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged. To put it another way, you

1  the grand jury not to indict.[7] In finding this instruction constitutional, the court stated in words that
2  ring true here: "It is the grand jury's position in the constitutional scheme that gives it its
3  independence, not any instructions that a court might offer."  408 F.3d at 1206.  The other
4  instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause. That's the simple formulation that I mentioned to a number of you during the jury selection process. Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.
>
> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward. If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Exhibit A at 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.
>
> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Exhibit A at 23.

---

> should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[7] The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence. The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause. As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)). "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment. 408 F.3d at 1206.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the discretion not to return an indictment per Navarro-Vargas. Further, if a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential jury nullification advocate. See Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus, there was no error requiring dismissal of this Indictment or any other indictment by this Court exercising its supervisory powers.

Further, a reading of the dialogues between Judge Burns and the three excused jurors found in the supplemental transcript excerpts (see United States' Appendix filed on March 4, 2008) reflects a measured, thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury because of their views. Judge Burns' reference back to those three colloquies cannot be construed as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced thereby, a burden she has to bear. "Absent such prejudice – that is, absent 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]' – a dismissal is not warranted." Isgro, 974 F.2d at 1094.

### 3. The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution

Concerning the new grand jurors' relationship to the United States Attorney and the Assistant U.S. Attorneys, Judge Burns variously stated:

> [T]here's a close association between the grand jury and the U.S. Attorney's Office.
>
> . . . . You'll work closely with the U.S. Attorney's Office in your investigation of cases.

Exhibit A at 11.

> [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries. They generally work together.

Exhibit A at 12.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

Exhibit A at 20.[8]

> As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.
>
> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Exhibit A at 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause." Memorandum at 17. Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'" Id. From this lash-up Defendant contends:

> These <u>instructions create a presumption</u> that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:
>
> (1) I have to consider evidence that undercuts probable cause.

---

[8] Just prior to this instruction, Judge Burns had informed the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Exhibit A at 19.

> (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.
>
> (3) Because no such evidence was presented to me, I may conclude that there is none.
>
> Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.
>
> The instructions therefore discourage investigation – if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

Memorandum at 26.[9]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[10] (emphasis added)). See also

---

[9] The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994).

[10] Note that in Williams the Court established:

> Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted). The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55. See also United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir. 2000). However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers would not be invoked to ward off an attack on

<br>

United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing Williams) (emphasis added)).

However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury.[11] As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[12] Specifically, it appears he is aware of USAM Section 9-11.233, which states:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

(Emphasis added.)[13] This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose 'substantial evidence that directly negates

---

grand jury procedures couched in constitutional terms. 974 F.2d at 1096.

[11] He recalled those days when instructing the new grand jurors. Exhibit A at 12, 14-16, 17-18.

[12] The USAM is available on the World Wide Web at www.usdoj.gov/usao/eousa/foia_reading_room/ usam/index.html.

[13] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the Internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

1  the guilt of a subject of the investigation' to the grand jury before seeking an indictment, <u>see</u>
2  USAM § 9-11.233 ." (Emphasis added.)[14]
3    The facts that Judge Burns' statement contradicts <u>Williams</u>, but is in line with self-imposed
4  guidelines for United States Attorneys, does not create the constitutional crisis proposed by
5  Defendant. No improper presumption/inference was created when Judge Burns reiterated what he
6  knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of the
7  cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no
8  "substantial" exculpatory evidence exists.[15] If it does exist, as mandated by the USAM, the
9  evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly
10 having his or her career destroyed by an Office of Professional Responsibility investigation. Even
11 if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present
12 any "substantial" exculpatory evidence, because there is none, the negative inference created
13 thereby in the minds of the grand jurors is legitimate. In cases such as Defendant's, the
14 Government has no "substantial" exculpatory evidence generated from its investigation or from

---

[14] <u>See</u> <u>www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm.</u> Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶"E". <u>See</u> <u>www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm. htm</u>.

[15] Recall Judge Burns also told the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Exhibit A at 19.

submissions tendered by the defendant.[16] There is nothing wrong in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution. In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment. 974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations."). That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed policy.[17] Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or any case. The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was

---

[16] Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder. Therefore, defense submissions to the grand jury will be few and far between.

[17] The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

authorized by Navarro-Vargas. 408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor"). But he also repeatedly "remind[ed] the grand jury that it stands between the government and the accused and is independent," which was also required by Navarro-Vargas. 408 F.3d at 1207. In this context the unnecessary "duty-bound" statement does not mean the instructions were constitutionally defective requiring dismissal of this indictment or any indictment.

The "duty bound" statement constitutional contentions raised by Defendant do not indicate that the "'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed." Isgro, 974 F.2d at 1094 (citation omitted). Therefore, this Indictment, or any other indictment, need not be dismissed.

Moreover, unless Defendant can point to exculpatory evidence that the Government knew about and failed to present to the grand jury, the Court should not order production of the grand jury transcript of this case.

## IV

## CONCLUSION

For the above stated reasons, the Government respectfully requests that Defendant's motion be denied.

DATED:     March 20, 2008.

                                                   Respectfully Submitted,

                                                   KAREN P. HEWITT
                                                   United States Attorney

                                                 s/Alessandra P. Serano
                                               ALESSANDRA P. SERANO
                                               Assistant United States Attorney

|   |   |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 08CR0254-WQH |
| Plaintiff, | |
| v. | |
| JOSE SOBERANES-ROBLES, | CERTIFICATE OF SERVICE |
| Defendant. | |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IT IS HEREBY CERTIFIED THAT:

I, ALESSANDRA P. SERANO, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Supplemental Response and Opposition to Defendant's Motion to Dismiss the Indictment on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Elizabeth Barros, Esq.
Federal Defenders of San Diego, Inc.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 20, 2008.

                                                s/Alessandra P. Serano
                                              ALESSANDRA P. SERANO